UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

| | |
|---|---|
| NATIONAL FIRE INSURANCE COMPANY OF HARTFORD; THE CONTINENTAL INSURANCE COMPANY; CONTINENTAL CASUALTY COMPANY; AND VALLEY FORGE INSURANCE COMPANY, <br><br> Plaintiffs, <br><br> v. <br><br> STANDARD TEXTILE CAROLINA, INC. <br><br> Defendant. | ) ) ) ) ) ) ) No. 1:26-cv-725 ) ) ) ) ) ) ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

National Fire Insurance Company of Hartford ("NFIC"), Valley Forge Insurance Company ("Valley Forge"), Continental Casualty Company ("CCC"), and The Continental Insurance Company ("CIC") for their Complaint for Declaratory Judgment against Standard Textile Carolina, Inc. ("STC") state as follows:

## NATURE OF ACTION

1. Insurers, NFIC, Valley Forge, CCC, and CIC (collectively, the "CNA Insurers"), seek a declaration, pursuant to 28 U.S.C. §§ 2201 and 2202, that they have no duty to defend or indemnify STC in connection with the lawsuit *South Carolina Public Service Authority, a/k/a Santee Cooper, an agency of the State of South Carolina v. AGC Chemicals Americas, Inc., et al.,* Case No. 25-cv-10305 in the U.S. District Court for the District of South Carolina multidistrict proceeding, *In Re Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2873 (the "Underlying Lawsuit") under primary and excess policies issued to STC's parent, Standard Textile Co. Inc. ("Standard Textile").

1

2.      In the Underlying Lawsuit, the plaintiff, a wholesale drinking water supplier, asserts that STC and other defendants have contaminated the lakes from which the plaintiff draws its water supplies with PFAS PFOA, PFOS, PFHxS, PFNA, PFBS chemicals and/or GenX Chemicals (referred to collectively in the Underlying Lawsuit and herein as "PFAS"). As against STC, the Underlying Lawsuit alleges that wastewater from STC's facility contains PFAS which cannot be removed during the treatment processes used by the local public water treatment plant. It is alleged that, as a result, the public water treatment plant releases water containing PFAS from STC's facility into waterways from which the plaintiff sources water, allegedly contaminating the plaintiff's water supply and property.

3.      The insurance policies in this action are primary and excess policies issued to STC's parent, Standard Textile, at its headquarters in Cincinnati, Ohio. STC is among the various entities also included as Named Insured on the Standard Textile policies.

4.      The primary policies contain absolute pollution exclusions which bar coverage for the Underlying Lawsuit under the policies' standard Commercial General Liability ("CGL") Coverage Part. By endorsement, the primary policies also include Limited Pollution Coverage, which, subject to its terms, provides coverage for "property damage" resulting from a "limited pollution incident" on or from premises STC owns, rents, or occupies, provided that certain conditions are satisfied.  Under these conditions, for coverage to apply, the first emission, discharge, release, or escape of "pollutants" from which any "property damage" arises must be demonstrable as having occurred during the policy period, and commenced and ended within seven days. The pollution incident must also occur entirely above ground. The coverage is also subject to various exclusions, including a "Natural Resource" Exclusion, under which there is no coverage for a request or demand by a designated natural resource trustee, that STC assess, replace, restore

2

or rehabilitate a natural resource, or otherwise provide compensation for "property damage" to a natural resource due to the effects of "pollutants."

5. Based on the absolute pollution exclusion, primary insurers NFIC, CCC, and Valley Forge disclaimed coverage for the Underlying Lawsuit under the primary policies' CGL Coverage Part. Out of an abundance of caution, they agreed to defend STC under the primary policies' Limited Pollution Coverage, subject to a full and complete reservation of rights, including the right to pursue declaratory relief for the purpose of terminating the defense.

6. In this action, NFIC, CCC, and Valley Forge seek a declaration that there is no coverage for the Underlying Lawsuit under the primary policies because: (a) the absolute pollution exclusion bars coverage under the CGL Coverage Part; and (b) the Limited Pollution Coverage does not apply because, among other things: (i) the alleged PFAS-containing wastewater releases do not qualify as a "limited pollution incident" within the meaning of the limited pollution coverage; (ii) the discharges of wastewater did not occur entirely above ground, and are not demonstrable as having first occurred during a given policy period, and having commenced and ended within seven days; and (iii) various exclusions, including the Natural Resource Exclusion, also apply.

7. Excess insurer, CIC, also seeks a declaration that, based on the grounds for disclaimer under the primary policies, there is no follow form excess liability coverage under the excess liability policies, and an absolute pollution exclusion bars coverage under the excess policies' separate umbrella coverage part.

**THE PARTIES**

8. Plaintiff NFIH is an insurance company organized under the laws of the State of Illinois, with a principal place of business in Chicago, Illinois.

3

9.      Plaintiff CCC is an insurance company organized under the laws of the State of Illinois, with a principal place of business in Chicago, Illinois.

10.     Plaintiff CIC is an insurance company organized under the laws of the State of Pennsylvania, with a principal place of business in Radnor, Pennsylvania.

11.     Plaintiff Valley Forge is an insurance company organized under the laws of the State of Pennsylvania, with a principal place of business in Radnor, Pennsylvania.

12.     STC is a corporation incorporated under the laws of the State of Ohio, with a principal place of business in Union, South Carolina.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 2201 and 2202 insofar as the CNA Insurers seek a declaration of their rights and duties under insurance policies issued and delivered to Standard Textile in Ohio under which Ohio corporation, STC, is an additional named insured. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as diversity exists between the plaintiffs, NFIH, CCC, CIC, and Valley Forge, and the defendant, STC and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

14.     There is a present and actual controversy between the parties because the CNA Insurers seek a ruling that they have no duty to defend or indemnify STC in connection with the Underlying Lawsuit, and may, accordingly terminate the defense they have been providing to STC subject to a reservation of rights.

15.     Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391(b)(2), because STC is an Ohio corporation and the policies at issue were issued and delivered to Standard Textile at its Cincinnati, Ohio headquarters.

## FACTUAL BACKGROUND

**A.      The Underlying Lawsuit**

16.      On November 24, 2024, the Underlying Lawsuit was filed by South Carolina Public Service Authority, a/k/a Santee Cooper ("Santee Cooper"), a state agency responsible for, among other things, supplying drinking water to county water providers in South Carolina.

17.      On June 5, 2025, Santee Cooper filed its Amended Complaint in the Underlying Lawsuit (the "Underlying Complaint"), adding claims against STC as one of a group of entities identified in the Underlying Complaint as the "Discharger Defendants." A copy of the Underlying Complaint is attached hereto as Exhibit 1.

18.      The Underlying Complaint alleges that, for decades, the Discharger Defendants, including STC, have owned and operated industrial facilities from which they discharge products that contain or degrade to PFAS into the Santee River Basin.

19.      According to the Underlying Complaint, some of the Discharger Defendants directly discharge PFAS-contaminated wastewater, while others do so indirectly via certain public wastewater treatment plants ("WWTPs"), including the Tosch's Creek WWTP.

20.      STC is identified in the Underlying Complaint as the owner and operator of an industrial facility located at 100 Highpoint Drive, Union, South Carolina (the "STC Facility"), at which it allegedly uses products that contain or degrade to PFAS.

21.      According to the Underlying Complaint, as part of its processes, the STC Facility discharges industrial wastewater contaminated with products that contain or degrade to PFAS into the Tosch's Creek WWTP.

22. The Underlying Complaint alleges that the Tosch's Creek WWTP cannot remove STC's PFAS, and, as a result, water the Tosch's Creek WWTP discharges to a tributary of the Broad River contains PFAS.

23. The PFAS-contaminated water allegedly travels downstream, contaminating Santee Cooper's properties and water sources on Lake Marion and Lake Moultrie, from which Santee Cooper allegedly draws water for processing and distribution to its customers.

24. It is alleged that the underlying defendants' PFAS contaminate Santee Cooper's sources at concentrations exceeding what the U.S. Environmental Protection Agency ("EPA") deems safe for consumption, and Santee Cooper's existing water treatment processes cannot remove the PFAS. As a result, the Underlying Complaint alleges, Santee Cooper requires new water treatment technologies to remove the defendants' PFAS.

25. The Underlying Complaint asserts that Discharge Defendants, including STC, have and continue to intentionally discharge PFAS and/or PFAS-containing products to their applicable WWTPs even though they knew or should have known that the PFAS cannot be removed and that water containing PFAS would invade Santee Cooper's properties.

26. Santee Cooper asserts that STC and the other Discharger Defendants knew or reasonably should have known that the PFAS being discharged is environmentally persistent and bioaccumulative, and that surface waters in the Santee River Basin are vulnerable to the contamination that has taken place.

27. As against STC and the other Discharger Defendants, the Underlying Complaint asserts causes of action for private and public nuisance, trespass, negligence, gross negligence, and/or recklessness.

28. In the Underlying Complaint, Santee Cooper seeks a judgment against all the underlying defendants, jointly and severally:

(a) requiring them to abate the nuisance they have allegedly caused, created, and maintained;

(b) requiring them to abate their trespasses onto Santee Cooper's properties;

(c) requiring them to remove their PFAS chemicals from Santee Cooper's water systems by funding evaluation, testing, acquisition, installation, operation, and maintenance of treatment technology capable of removing them;

(d) for past, present, and future compensatory damages, interest, and reasonable attorneys' fees and litigation expenses;

(e) punitive damages in an amount to punish and penalize the defendants and deter them from future wrongful conduct.

**B.** **The Primary Policies**

29. STC is one of several companies operating under the Standard Textile name that are included as additional named insureds under primary CGL policies NFIC, CCC, and Valley Forge issued to Standard Textile. In particular, CGL Policy No. 4027216637 was issued by Valley Forge for annual policy periods spanning from January 1, 2017 to January 1, 2019, and by NFIC for annual policy periods spanning from January 1, 2019 to January 1, 2023. CGL Policy No. 7034575809 was issued by CCC, for annual policy periods spanning from January 1, 2023 to January 1, 2026. The CGL Policy Nos. 4027216637 and 7034575809 are referred to collectively herein as the "Primary Policies." Copies of the Primary Policies are attached hereto as Exhibits 2 through 10.

30. The Primary Policies include a CGL Coverage Part.

31. The Insuring Agreement to CGL Coverage Part provides, in relevant part, as follows:

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies. We will have the right and duty to defend the insured against any **suit** seeking those damages. However, we will have no duty to defend the insured against any **suit** seeking damages for **bodily injury** or **property damage** to which this insurance does not apply. We may, at our discretion, investigate any **occurrence** and settle any **claim** or **suit** that may result.

b. This insurance applies to **bodily injury** and **property damage** only if:

(1) The **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the **coverage territory**;

(2) The **bodily injury** or **property damage** occurs during the **policy period**; and

\*\*\*\*

32. As amended by an endorsement, titled "Pollution Exclusion Amendatory Endorsement" (the "Pollution Exclusion Endorsement"), the CGL Coverage Part includes the following pollution exclusion:

This insurance does not apply to:

(1) **Bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants:**

a. At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any **Insured**. However, this paragraph does not apply to:

i. **Bodily injury** if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat for personal use, but the building's occupants or their guests

ii. **Bodily injury** or **property damage** for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional **Insured** with respect to your ongoing operations performed for that additional **Insured** at the

8

premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any **Insured**, other than that additional **Insured**; or

   iii. **Bodily injury** or **property damage** arising out of heat, smoke or fumes from a **hostile fire;**

b. At or from any premises, site or location which is or was at any time used by or for any **Insured** or others for the handling, storage, disposal, processing or treatment of waste;

c. Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

   i. Any **Insured**; or

   ii. Any person or organization for whom you may be legally responsible; or

d. At or from any premises, site or location on which any **Insured** or any contractors or subcontractors working directly or indirectly on any **Insured**'s behalf are performing operations if the pollutants are brought on or to the premises, site or location in connection with such operations by such **Insured**, contractor or subcontractor. However, this subparagraph does not apply to:

   i. **Bodily injury** or **property damage** arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of **mobile equipment** or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold store or receive them. This exception does not apply if the **bodily injury** or **property damage** arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such **Insured**, contractor or subcontractor;

   ii. **Bodily injury** or **property damage** sustained within a building and caused by the release of gases fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

   iii. **Bodily injury** or **property damage** arising out of heat, smoke or fumes from a **hostile fire.**

e. At or from any premises, site or location on which any **Insured** or any contractors or subcontractors working directly or indirectly on any **Insured's** behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **pollutants**

(2) Any loss, cost or expense arising out of any:

(a) request, demand, order or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of, **pollutants**; or

(b) Claim by or on behalf of a governmental authority for **damages** because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of any **pollutants**.

However, if liability for **damages** because of **property damage** is not excluded by paragraph (1) of this exclusion, then neither will paragraph (2)(a) above serve to exclude such **damages**.

33. The CGL Coverage Part includes the following definitions:

**Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

****

**Pollutants** mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

****

**Property damage** means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

****

10

34. The Primary Policies contain an endorsement, titled "Additional Coverage Limited Pollution Liability Coverage Endorsement" (the "Limited Pollution Coverage Endorsement").

35. The Limited Pollution Coverage Endorsement amends the CGL Coverage Part to add an Insuring Agreement for Limited Pollution Incident Coverage, which provides, in relevant part, as follows:

> Subject to the Limited Pollution Liability Limits and the Pollution Deductible Amount, the Insurer will pay those sums the **Insured** becomes legally obligated to pay as **damages** because of **bodily injury** or **property damage** that directly results from a **limited pollution incident** within the **coverage territory**, provided that:
>
> a. the first emission, discharge, release or escape of the **pollutants** from which such **bodily injury** or **property damage** arises is demonstrable as having occurred during the **policy period**; and
>
> b. such **bodily injury** or **property damage** does not qualify for coverage under **Coverage A - Bodily Injury and Property Damage Liability,** whether or not any **Coverage A** limits remain; and
>
> c. **(PREMISES COVERAGE)** such **limited pollution incident** happens on or from premises the **Named Insured** owns, rents or occupies, but only if the **limited pollution incident** happens entirely **above-ground**, and is demonstrable as commencing and ending within seven days; or
>
> d. **(WORKSITE COVERAGE)** such **limited pollution incident** happens on or from a **worksite**.
>
> The Insurer will have the right and duty to defend any **suit** seeking those **damages**, even if the allegations of the **suit** are groundless, false or fraudulent. The Insurer may at its discretion investigate any **limited pollution incident** and settle any **claim** that may result. But:
>
> (1) The Insurer's right and duty to defend end when the Insurer has used up the applicable limit of insurance in the payment of judgments or settlements; and
>
> (2) The Insurer has no duty to defend **suits** seeking **damages** not covered by this insurance.

11

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**, which hereby also apply to **LIMITED POLLUTION INCIDENT COVERAGE**.

36.     The Limited Pollution Coverage Endorsement includes the following exclusions under which Limited Pollution Incident Coverage does not apply:

**<u>Cleanup or Monitoring Costs</u>**

any loss, cost or expense arising out of any:

**(1)**     request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of, **pollutants**; or

**(2)**     **claim** by or on behalf of a governmental authority for **damages** because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of, **pollutants**.

But this exclusion does not apply to liability for **damages** for **property damage** that is otherwise covered by this **LIMITED POLLUTION INCIDENT COVERAGE**.

**<u>Failure of Pollution Control Equipment</u>**

**bodily injury** or **property damage** arising out of a **limited pollution incident** which results from failure of air or wastewater pollution control equipment.

**<u>Failure to Comply With Environmental Statutes</u>**

**bodily injury** or **property damage** arising out of a **limited pollution incident** which results from, or is directly or indirectly attributable to, failure to comply with any applicable statute, regulation, ordinance, directive or order relating to the protection of the environment and promulgated by any governmental body, provided that failure to comply is a willful or deliberate act or omission of:

**(1)** the **Insured**; or

**(2)** the **Named Insured** or any of the **Named Insured's** executive officers (if a corporation), members or managers (if a limited liability corporation), or members or partners (if a joint venture or partnership).

**\*\*\*\***

**Natural Resources**

Any loss, cost or expense arising out of any request, demand, order or suit by a designated natural resources trustee or other person vested with the authority under any federal or state statute to make such claims, that any Insured or others assess, replace, restore, or rehabilitate natural resources, or in any way provide compensation for property damage to natural resources due to the effects of pollutants.

**Punitive Damages**

any punitive or exemplary **damages** nor the multiplied portion of multiplied **damages**. This exclusion does not apply if such exclusions are not permitted in the state where the **Named Insured** is domiciled.

**Repeats of Recent Incidents**

**bodily injury** or **property damage** arising out of a **limited pollution incident** which involves essentially the same **pollutants** from essentially the same source as a **limited pollution incident** which occurred within the previous 12 months.

**\*\*\*\***

37.    The Limited Pollution Coverage Endorsement includes the following additional definitions:

**Above-ground** means on or above:

**a.**  the surface of the land;

**b.**  the basement floor of any building; or

**c.**  any navigable or surface body of water.

**\*\*\*\***

13

**Limited pollution incident** means an accidental emission, discharge, release, or escape of pollutants that results in the injurious presence of **pollutants** in or upon land, the atmosphere, interior of a building or any water course, body of water or ground water. A series of emissions, discharges, releases or escapes of **pollutants** that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision will be deemed to be one **limited pollution incident**. All **bodily injury** and **property damage** resulting from one limited pollution incident shall be deemed to have occurred only at the commencement date of the **limited pollution incident**.

****

**Worksite** means any site or location on which any **Insured** or any contractors or subcontractors working directly or indirectly on any **Insured's** behalf are performing operations, including sites temporarily borrowed or rented in support of a single worksite for storage of construction equipment. **Worksite** does not include any premises, site or location:

**(1)**     which is or was at any time owned by, rented or loaned to any **Insured**; nor

**(2)**     occupied by any **Insured** for any purpose other than performing construction operations for others.

****

## C.     The Excess and Umbrella Liability Policies

38.     CIC issued Excess and Umbrella Liability Policy No. 6076047653 to Standard Textile for annual policy periods spanning from January 1, 2019 to January 1, 2022, (collectively, the "Excess Policies").  Copies of the Excess Policies are attached as Exhibits 11 to 13.

39.     The Excess Policies include Coverage A – Excess Follow Form Liability and Coverage B – Umbrella Liability.

40.     STC is a Named Insured for purposes of Coverages A and B of the Excess Policies.

41.     The Insuring Agreement to Coverage A – Excess Follow Form Liability provides, in relevant part, as follows:

14

The Insurer will pay on behalf of the **Insured** those **damages** in excess of the applicable **underlying limits.** Coverage hereunder will attach only after the full amount of the applicable **underlying limits** have been exhausted through payment in legal currency of covered loss under all applicable **underlying insurance** and to which this Coverage A applies.

Coverage A under this Policy will then apply in conformance with the provisions of the applicable **underlying insurance** except for the premium, limits of insurance, deductible, retentions, or any defense obligations and any other terms and conditions specifically set forth in this Policy.

****

42.     The Excess Policies' Coverage A – Excess Follow Form Liability contains the following exclusion:

**Pollution**

a.  any actual or alleged **bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**:

i.  at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any **Insured** except that this subparagraph does not apply to:

(a) **bodily injury** or **property damage** arising out of heat, smoke or fumes from a **hostile fire**; or

(b) **bodily injury** if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

ii.  at or from any premises, site or location which is or was at any time used by or for any **Insured** or others for the handling, storage, disposal, processing or treatment of waste;

iii.  which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any **Insured** or any person or organization for whom the **Named Insured** may be legally responsible; or

15

**iv.** at or from any premises, site or location on which any **Insured** or any contractors or subcontractors working directly or indirectly on any **Insured**'s behalf are performing operations:

**(a)** If the **pollutants** are brought on or to the premises, site or location in connection with such operations by such **Insured**, contractor or subcontractor; except that this subparagraph does not apply to **bodily injury** or **property damage** arising out of:

**(1)** the escape of fuels, lubricants, or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for operation of **mobile equipment** or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the **bodily injury** or **property damage** arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such **Insured**, contractor or subcontractor; or

**(2)** heat, smoke or fumes from a **hostile fire**; or

****

**b.** any actual or alleged **personal and advertising injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants** at any time.

**c.** any actual or alleged loss, cost or expense arising out of any:

**i.** request, demand, order or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**; or

**ii.** claim by or on behalf of a governmental authority for **damages** because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**.

16

However, if liability for **damages** because of **property damage** is not excluded by paragraph **a.** of this exclusion, then neither will paragraph **c.** above serve to exclude such **damages**.

43.     The Excess Policies also include Coverage B – Umbrella Liability; the Insuring

Agreement to Coverage B – Umbrella Liability provides, in relevant part, as follows:

> The Insurer will pay on behalf of the **Insured** those **damages** in excess of the **retained amount:**
>
> **1.**     that an **Insured** becomes legally obligated to pay because of **bodily injury, property damage** or **personal and advertising injury;** or
>
> ****
>
> and provided that:
>
> **a.**  the **bodily injury** or **property damage** occurs during the **policy period;**
>
> **b.**  the **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the **coverage territory;**
>
> Provided, however, that **Coverage B - Umbrella Liability:**
>
> i.  does not apply to:
>
> (a) any part of **damages** to which **underlying insurance** applies; or
>
> (b) **any** part of **damages** to which **underlying insurance** would have applied regardless of:
>
> (1) the availability of **underlying insurance;** or
>
> (2) the exhaustion of the applicable **underlying limits;**
>
> (c) **any defense costs** related to **damages** as described in **a.** and **b.** above.
>
> ****

44.     The Excess Policies' Coverage B – Umbrella Liability contains the following

pollution exclusion:

17

**Pollution**

a. any actual or alleged **bodily injury**, **property damage** or **personal and advertising injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants** at any time.

b. any actual or alleged loss, cost or expense arising out of any:

   i. request, demand, order, or statutory or regulatory requirement that anyone test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of **pollutants**; or

   ii. **claim** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of **pollutants**.

**\*\*\*\***

D.     **Coverage Position**

45.     In a January 14, 2026 letter, primary insurers, NFIC, CCC, and Valley Forge, advised STC that they agreed to defend STC in the Underlying Lawsuit subject to a full and complete reservation of rights, including the right to seek declaratory relief for the purposes of terminating its defense.  A copy of the January 14, 2026 letter (the "position letter") is attached hereto as Exhibit 14.

46.     The position letter advised that, based on the application of the pollution exclusion in the CGL Coverage Part, there is no coverage for the Underlying Lawsuit under the Primary Policies' CGL Coverage Part.

47.     The letter further advised, under the Primary Policies' Limited Pollution Coverage Endorsement, coverage for the Underlying Lawsuit applies only with respect to "property damage"

18

resulting from a "limited pollution incident," as those terms are defined, and only if certain conditions of coverage, set out in the Insuring Agreement to the Limited Pollution Coverage Endorsement, are satisfied, including: (A) the first emission, discharge, release, or escape of "pollutants" from which the "property damage" arises is demonstrable as having occurred during the policy period; and (B) the "limited pollution incident" must happen on or from premises STC owns, rents or occupies, entirely above ground, and be demonstrable as commencing and ending within seven days.

48.     In the position letter, NFIC, CCC, and Valley Forge reserve to the right to disclaim coverage based on the coverage issues outlined therein, including to the extent any damages are not "property damage;" the damage is not the result of a "limited pollution incident;" and to the extent the pollution incident does not satisfy the Insuring Agreement's additional conditions.  The position letter further reserves the right to disclaim coverage in the event one or more of the Limited Pollution Liability Coverage Endorsement's exclusions applies.

49.     Additionally, the position letter advises that, while coverage under the Excess Policies is not currently implicated due to the lack of exhaustion and/or current application of underlying insurance, based on the application of pollution exclusions in the Excess Policies, there is no coverage for the Underlying Lawsuit under the Excess Policies.

## COUNT I – DECLARATORY JUDGMENT
### The Pollution Exclusion Precludes Coverage Under the CGL Coverage Part

50.     NFIC, CCC, and Valley Forge repeat and incorporate by reference paragraphs 1 through 49 as though fully set forth herein.

51.     Coverage under the Primary Policies' CGL Coverage Part is subject Exclusion f, "pollution," as modified by the Pollution Exclusion Endorsement.

52.     Under paragraph (1) of the Pollution Exclusion, the CGL Coverage Part does not apply to "property damage" arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of "pollutants" at or from any premises, site, or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

53.     Under paragraph (2) of the Pollution Exclusion, the CGL Coverage Part does not apply to any loss, cost or expense arising out of: (a) any request, demand, order, or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to, or assess the effects of "pollutants;" or (b) any claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, clean up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants."

54.     As defined in the Primary Policies, "pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which includes materials to be recycled, reconditioned, or reclaimed.

55.     The PFAS chemicals at issue in the Underlying Lawsuit, are "pollutants" as defined.

56.     Because the Underlying Lawsuit seeks to impose liability on STC for the alleged discharge and release of wastewater contaminated with PFAS from the STC Facility, which is owned and operated by STC, paragraph (1) of the Pollution Exclusion applies.

57.     Because the Underlying Lawsuit seeks relief for monitoring, clean up, removal, containment, and treatment of PFAS in Santee Cooper's water supplies, paragraph (2) of the Pollution Exclusion applies.

58.     Based on the application of paragraph (1) and/or paragraph (2) of the Pollution Exclusion, there is no coverage for the Underlying Lawsuit under the Primary Policies' CGL Coverage Part.

59.     Based on the forgoing, NFIC, CCC, and Valley Forge are entitled to a declaration that there is no coverage for the Underlying Lawsuit under the Primary Policies' CGL Coverage Part.

## COUNT II - DECLARATORY JUDGMENT

**Limited Pollution Incident Coverage (Premises Coverage) Does Not Apply Because Conditions Requiring an "Above Ground" Incident, Demonstrable as Commencing and Ending within Seven Days Are Not Satisfied**

60.     NFIC, CCC, and Valley Forge repeat and incorporate by reference paragraphs 1 through 59 as though fully set forth herein.

61.     The Primary Policies include Limited Pollution Incident Coverage pursuant to the terms of the Limited Pollution Coverage Endorsement, which includes Premises Coverage and Worksite Coverage.

62.     Under the Limited Pollution Coverage Endorsement's Insuring Agreement, Limited Pollution Incident Coverage (Premises Coverage) applies, in relevant part, with respect to "property damage" that results directly from a "limited pollution incident," only if the "limited pollution incident" happens on or from premises the Named Insured owns, rents, or occupies, provided that: (a) the "limited pollution incident" happens entirely "above ground" and is demonstratable as commencing and ending within seven days; and (b) the first emission, discharge, release or escape of "pollutants" from which "property damage" arises is demonstrable as having occurred during the policy period.

21

63.     The term "limited pollution incident" means, in relevant part, an accidental emission, discharge, release, or escape of "pollutants" that results in the injurious presence of "pollutants" in or upon land, the atmosphere, interior of a building or any water course, body of water or ground water.

64.     The term "above ground" means: (a) the surface of the land; (b) the basement floor of any building; or (c) any navigable or surface body of water.

65.     In the Underlying Lawsuit, STC is identified as being among the Discharger Defendants; STC allegedly discharges PFAS contaminated wastewater indirectly via the Tosch's Creek WWTP. It is alleged that the Tosch's Creek WWTP cannot remove STC's PFAS, and, as a result, the water it discharges to a tributary of the Broad River contains PFAS.

66.     The Underlying Complaint does not allege, and STC has not identified a "limited pollution incident" that happened entirely "above-ground" on or from the STC Facility.

67.     Additionally, the Underlying Lawsuit does not allege, and STC has not identified a "limited pollution incident" happening entirely "above-ground" on or from the STC Facility, and demonstrably commencing and ending within seven days.

68.     Because the condition of coverage, requiring that any "limited pollution incident" on from STC's premises must be entirely "above-ground," is not satisfied, NFIC, CCC, and Valley Forge are entitled to a declaration there is no Premises Coverage for the Underlying Lawsuit under the Limited Pollution Coverage Endorsement.

69.     Further, because the condition of coverage, requiring that any "limited pollution incident" taking place "above-ground" must be demonstrable as having commenced and ended within seven days is not satisfied, there is no Premises Coverage for the Underlying Lawsuit under the Limited Pollution Coverage Endorsement.

70. Based on the forgoing, NFIC, CCC, and Valley Forge are entitled to a declaration that there is no coverage for the Underlying Lawsuit under the Limited Pollution Coverage Endorsement's Limited Pollution Incident (Premises Coverage).

## COUNT III - DECLARATORY JUDGMENT

**Limited Pollution Incident Coverage (Premises Coverage) Does Not Apply Because the First Emission, Discharge, Release or Escape of Pollutants is Not Demonstrable as Having Occurred During the Policy Period**

71. NFIC, CCC, and Valley Forge repeat and incorporate by reference paragraphs 1 through 70 as though fully set forth herein.

72. Under the Limited Pollution Coverage Endorsement's Insuring Agreement, Limited Pollution Incident Coverage (Premises Coverage) applies with respect to "property damage" that results directly from a "limited pollution incident" only if the "limited pollution incident" happens on or from premises the Named Insured owns, rents, or occupies, and: (a) the "limited pollution incident" happens entirely "above ground" and is demonstratable as commencing and ending within seven days; and (b) the first emission, discharge, release or escape of pollutants from which property damage arises is demonstrable as having occurred during the policy period.

73. The Underlying Lawsuit seeks to impose liability on STC and the other Discharger Defendants for the allegedly prolonged discharge of wastewater allegedly containing PFAS over multiple years.

74. The Underlying Complaint does not allege, and STC has not identified a first emission, discharge, release or escape of PFAS that is demonstrable as having occurred during the policy period of any of one of the Primary Policies.

23

75.     Because the condition of coverage, requiring that the first emission, discharge, release or escape of "pollutants" from which any "property damage" arises must be demonstrable as having occurred during the policy period is not satisfied, there is no Premises Coverage for the Underling Lawsuit under the Limited Pollution Coverage Endorsement.

76.     Based on the forgoing, NFIC, CCC, and Valley Forge are entitled to a declaration that there is no coverage for the Underlying Lawsuit under the Limited Pollution Coverage Endorsement's Limited Pollution Incident (Premises Coverage).

## COUNT IV - DECLARATORY JUDGMENT

**Limited Pollution Incident Coverage Does Not Apply Because Santee Cooper's Alleged Damages Are Not the Result of a "Limited Pollution Incident"**

77.     NFIC, CCC, and Valley Forge repeat and incorporate by reference paragraphs 1 through 76 as though fully set forth herein.

78.     Subject to the Limited Pollution Coverage Endorsement's terms, Limited Pollution Incident Coverage applies to liability for "property damage" that results directly from a "limited pollution incident," which is defined, in relevant part, as "an accidental emission, discharge, release or escape of pollutants…"

79.     The Underlying Lawsuit seeks to impose liability on STC and the other Discharger Defendants for the allegedly prolonged discharge of wastewater allegedly containing PFAS or chemicals that breakdown to PFAS to public WWTPs over multiple years. It is further alleged that STC's discharges of PFAS-containing wastewater were intentional.

80.     The Underlying Complaint does not allege and STC has not identified an incident in which there was an accidental emission, discharge, release or escape of PFAS for which Santee Cooper seeks to impose liability on STC.

24

81.     Because the Underlying Lawsuit does not involve liability for a "limited pollution incident" as defined, Limited Pollution Incident Coverage does not apply.

82.     On this basis, NFIC, CCC, and Valley Forge are entitled to a declaration that there is no coverage for the Underlying Lawsuit under the Limited Pollution Coverage Endorsement.

## COUNT V - DECLARATORY JUDGMENT

**Limited Pollution Incident Coverage (Worksite Coverage) Does Not Apply Because the STC Facility is Not a "Worksite"**

83.     NFIC, CCC, and Valley Forge repeat and incorporates by reference paragraphs 1 through 82 as though fully set forth herein.

84.     The Limited Pollution Coverage Endorsement's Insuring Agreement includes Worksite Coverage, which, subject to its terms, applies with respect to a "limited pollution incident" that happens on or from a "worksite."

85.     As defined, "worksite" does not include any premises, site or location which is or was at any time owned or occupied by or rented or loaned to any insured, except for the purpose of performing construction operations.  Because the STC Facility is owned and operated by STC, Worksite Coverage does not apply.

86.     On this basis, NFIC, CCC, and Valley Forge are entitled to a declaration that there is no coverage for the Underlying Lawsuit under the Limited Pollution Coverage Endorsement's Limited Pollution Incident Coverage (Worksite Coverage).

## COUNT VI - DECLARATORY JUDGMENT

**Limited Pollution Liability Coverage Does Not Apply to the Extent Santee Cooper Seeks Damages that Are Not Because of "Property Damage"**

87.     NFIC, CCC, and Valley Forge repeat and incorporate by reference paragraphs 1 through 86 as though fully set forth herein.

25

88.     Under the Limited Pollution Coverage Endorsement's Insuring Agreement, Limited Pollution Incident Coverage applies with respect to sums an "Insured" becomes legally obligated to pay as damages because of "property damage" that results directly from a "limited pollution incident."

89.     The term "property damage" is defined as: (a) physical injury to tangible property, including all resulting loss of use of that property; or (b) loss of use of tangible property that is not physically injured.

90.     The Underlying Lawsuit seeks abatement of the nuisance and trespass posed by the defendants' alleged PFAS discharges and seeks an order requiring removal of PFAS from Santee Cooper's water systems by funding testing, installation, operation, and maintenance of technology capable of removing PFAS, and compensatory damages, including future damages.

91.     To the extent the Underlying Lawsuit does not seek to impose liability on STC for "property damage" as defined, coverage under the Limited Pollution Incident Coverage does not apply.

92.     NFIC, CCC, and Valley Forge seek a declaration that there is no coverage under the Limited Pollution Coverage Endorsement to the extent Santee Cooper does not seek damages for liability because of "property damage" arising out of a "limited pollution incident."

## COUNT VII - DECLARATORY JUDGMENT
### The Natural Resources Exclusion

93.     NFIC, CCC, and Valley Forge repeat and incorporate by reference paragraphs 1 through 92 as though fully set forth herein.

94.     The Limited Pollution Coverage Endorsement contains the Natural Resources Exclusion, under which the Limited Pollution Incident Coverage does not apply to any loss, cost

26

or expense arising out of any request, demand, order or suit by a designated natural resources trustee or other person vested with the authority under any federal or state statute to make such claims, that any Insured or others assess, replace, restore, or rehabilitate natural resources, or in any way provide compensation for property damage to natural resources due to the effects of pollutants.

95.     In the Underlying Lawsuit, Santee Cooper asserts that it is an agency of the State of South Carolina, statutorily vested with authority to treat, distribute, and sell drinking water pursuant to S.C. Code Ann. § 58-31-30, and §§ 58-31-10 to 740.

96.     According to the Underlying Lawsuit, Santee Cooper owns and occupies riparian property on Lake Marion in Santee, South Carolina, and Lake Moultrie in Moncks Corner, South Carolina, on which it operates surface water treatment plants.

97.     Santee Cooper allegedly draws raw water from Lake Marion and Lake Moultrie, which it processes, and provides as a wholesaler to local water providers in various counties in South Carolina.

98.     In the Underlying Lawsuit, Santee Cooper seeks a judgment requiring STC and the other defendants to, among other things, abate the nuisance and trespass caused by their allegedly PFAS-containing wastewater, remove PFAS from Santee Cooper's water systems, and pay past, present, and future compensatory damages to Santee Cooper.

99.     The Underlying Lawsuit seeks to replace, restore, or rehabilitate water – a natural resource – and/or demands compensation for damage to water due to the alleged effects of PFAS – a pollutant.  Accordingly, to the extent Santee Cooper has the authority to pursue its claims in the Underlying Lawsuit, the Natural Resource Exclusion applies.

100.    On this additional basis, NFIC, CCC, and Valley Forge seek a declaration that there is no coverage for the Underlying Lawsuit under the Limited Pollution Liability Coverage Endorsement.

## COUNT VIII - DECLARATORY JUDGMENT
### The Pollution Control Exclusion

101.    NFIC, CCC, and Valley Forge repeat and incorporate by reference paragraphs 1 through 100 as though fully set forth herein.

102.    The Limited Pollution Coverage Endorsement contains an exclusion, titled "Failure of Pollution Control Equipment," under which there is no coverage for any "property damage" arising out of a "limited pollution incident," which results from the failure of air or wastewater pollution control equipment (the "Pollution Control Exclusion").

103.    The Underlying Complaint alleges that Discharger Defendants, including STC, knew or should have known that conventional wastewater treatment technologies used by WWTPs that receive their wastewater cannot remove PFAS from the wastewater.

104.    To the extent any "property damage" in the Underlying Lawsuit arises out of a "limited pollution incident" resulting from the failure of wastewater pollution control equipment, the Pollution Control Exclusion applies.

105.    On this additional basis, NFIC, CCC, and Valley Forge seek a declaration that there is no coverage for the Underlying Lawsuit under the Limited Pollution Coverage Endorsement.

## COUNT IX - DECLARATORY JUDGMENT
### The Environmental Statutes Exclusion

106.    NFIC, CCC, and Valley Forge repeat and incorporate by reference paragraphs 1 through 105 as though fully set forth herein.

28

107.    The Limited Pollution Coverage Endorsement contains an exclusion, titled, "Failure to Comply With Environmental Statutes," under which there is no coverage for "property damage" arising out of a "limited pollution incident" which results from, or is directly or indirectly attributable to, the failure to comply with any applicable statute, regulation, ordinance, directive or order relating to the protection of the environment and promulgated by any governmental body, provided that failure to comply is a willful or deliberate act or omission of:(1) the Insured; or (2) Named Insured or any of the Named Insured's executive officers, members or managers, members or partners (the "Environmental Statutes Exclusion").

108.    The Underlying Complaint alleges that the Discharger Defendants, including STC, intend that, while using PFAS in their industrial processes, PFAS-containing wastewater generated by those processes is discharged to their applicable WWTP(s).  The Underlying Complaint further alleges that the conduct of the Discharger Defendants, including STC, is  wanton, willful, and in reckless disregard of Santee Cooper's property, and its property rights and riparian rights.

109.    To the extent any "property damage" in the Underlying Lawsuit arises out of a "limited pollution incident" resulting from, or directly or indirectly attributable to STC's willful or deliberate failure to comply with any applicable statute, regulation, ordinance, directive or order relating to the protection of the environment and promulgated by any governmental body, the Environmental Statutes Exclusion applies.

110.    Based on the Environmental Statutes Exclusion, NFIC, CCC, and Valley Forge are entitled to a declaration that there is no coverage for any "property damage" arising out of a "limited pollution incident" resulting from or directly or indirectly attributable to STC's willful or deliberate failure to comply with any applicable statute, regulation, ordinance, directive or order relating to the protection of the environment and promulgated by any governmental body.

29

111. On this additional basis, NFIC, CCC, and Valley Forge seek a declaration that there is no coverage for the Underlying Lawsuit under the Limited Pollution Coverage Endorsement.

## COUNT X - DECLARATORY JUDGMENT
### The Repeats of Recent Incidents Exclusion

112. NFIC, CCC, and Valley Forge repeat and incorporate by reference paragraphs 1 through 111 as though fully set forth herein.

113. The Limited Pollution Coverage Endorsement contains an exclusion, titled, "Repeats of Recent Incidents," under which there is no coverage for "property damage" arising out of a "limited pollution incident" involving essentially the same "pollutants" from essentially the same source as a "limited pollution incident" which occurred within the previous twelve months.

114. To the extent any "property damage" in the Underlying Lawsuit arises out of a "limited pollution incident" involving essentially the same "pollutants" from essentially the same source as a "limited pollution incident" which occurred within the previous twelve months, there is no coverage under the Repeats of Recent Incidents Exclusion applies.

115. Based on the Repeats of Recent Incidents Exclusion, NFIC, CCC, and Valley Forge are entitled to a declaration that there is no coverage for any "property damage" arising out of a "limited pollution incident" involving essentially the same "pollutants" from essentially the same source as a "limited pollution incident" which occurred within the previous 12 months.

116. On this additional basis, NFIC, CCC, and Valley Forge seek a declaration that there is no coverage for the Underlying Lawsuit under the Limited Pollution Coverage Endorsement.

## COUNT XI - DECLARATORY JUDGMENT
### The Cleanup or Monitoring Costs Exclusion

117.    NFIC, CCC, and Valley Forge repeat and incorporate by reference paragraphs 1 through 116 as though fully set forth herein.

118.    The Limited Pollution Coverage Endorsement contains an exclusion, titled, "Cleanup or Monitoring Costs," under which there is no coverage for any loss, cost or expense arising out of any: (1) request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of, "pollutants;" or (2) "claim" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of, "pollutants," except to the extent STC is liable for otherwise covered "property damage" arising from a "limited pollution incident."

119.    Except to the extent the Underlying Lawsuit otherwise involves liability for "property damage" arising from a "limited pollution incident," under the Cleanup and Monitoring Costs Exclusion, there is no coverage for any request, demand, order or requirement that STC test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of, "pollutants;" or pay damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of, "pollutants."

120.    Based on the Cleanup and Monitoring Costs Exclusion, except to the extent the Underlying Lawsuit otherwise involves liability for "property damage" arising from a "limited pollution incident," NFIC, CCC, and Valley Forge are entitled to a declaration that there is no

coverage for any request, demand, order of requirement that STC test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of, "pollutants;" or pay damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of, "pollutants."

121. On this additional basis, NFIC, CCC, and Valley Forge seek a declaration that there is no coverage for the Underlying Lawsuit under the Limited Pollution Coverage Endorsement.

## COUNT XII - DECLARATORY JUDGMENT
### Application of the Punitive Damages Exclusion

122. NFIC, CCC, and Valley Forge repeat and incorporate by reference paragraphs 1 through 121 as though fully set forth herein.

123. The Limited Pollution Coverage Endorsement contains a "Punitive Damages" exclusion, under which there is no coverage for any punitive or exemplary damages nor the multiplied portion of multiplied damages.

124. In the Underlying Lawsuit, Santee Cooper asserts a claim for punitive damages.

125. Based on the Punitive Damages exclusion, NFIC, CCC, and Valley Forge are entitled to a declaration that coverage for any punitive damages is excluded.

## COUNT XIII – DECLARATORY JUDGMENT
### No Coverage Under the Excess Policies' Coverage A – Follow Form Excess Liability Coverage

126. CIC repeats and incorporates by reference paragraphs 1 through 125 as though fully set forth herein.

127.    Under the Excess Policies' Coverage A – Excess Follow Form Liability Coverage, CIC will pay on behalf of the Insured those "damages" in excess of the applicable "underlying limits" to which the Excess Policies apply.

128.    As set out in the Excess Policies' Insuring Agreement, except for the policy premiums, limits of insurance, deductible, retentions and any defense obligations, Coverage A - Excess Follow Form Liability Coverage applies in conformance with the provisions of the applicable "underlying insurance," and will not provide coverage for any loss that is not covered by the applicable "underlying insurance" except by reason of the exhaustion of the "underlying limits" through payment of loss thereunder.

129.    For the 2019-20 Excess Policy, the 2019-20 Primary Policy is Scheduled Underlying Insurance; for the 2020-21 Excess Policy, the 2020-21 Primary Policy is Scheduled Underlying Insurance; for the 2021-22 Excess Policy, the 2021-22 Primary Policy is Scheduled Underlying Insurance.

130.    For the 2019-20 Excess Policy, Coverage A – Excess Follow Form Liability Coverage applies in conformance with, and no broader than, the provisions of the 2019-20 Primary Policy; for the 2020-21 Excess Policy, Coverage A – Excess Follow Form Liability Coverage applies in conformance with, and no broader than, the provisions of the 2020-21 Primary Policy; for the 2021-22 Excess Policy, Coverage A – Excess Follow Form Liability Coverage applies in conformance with, and no broader than, the provisions of the 2021-22 Primary Policy.

131.    Since Coverage A provides Excess Follow Form Liability Coverage only upon exhaustion of the "underlying limits" of insurance, which include the limits of all applicable "underlying insurance" listed under in the Schedule of Underlying Insurance, there is currently no

coverage for the Underlying Lawsuit under the Excess Policies' Coverage A – Excess Follow Form Liability Coverage because the limits of "underlying insurance" have not exhausted.

132. Further, Coverage A - Excess Follow Form Liability Coverage applies in conformance with the terms of, and provides no broader coverage than the Scheduled Underlying Primary Policies. Since, for the reasons set out herein, there is no coverage for the Underlying Lawsuit under the Primary Policies, there is also no coverage for the Underlying Lawsuit under the Excess Policies' Coverage A – Excess Follow Form Liability Coverage.

**COUNT XIV – DECLARATORY JUDGMENT**

**No Coverage Under the Excess Policies' Coverage A – Follow Form Excess Liability Coverage is Subject to an Absolute Pollution Exclusion**

133. CIC repeats and incorporates by reference paragraphs 1 through 132 as though fully set forth herein.

134. Under the Excess Policies' Coverage A – Excess Follow Form Liability Coverage, CIC will pay on behalf of the "Insured" those "damages" in excess of the applicable "underlying limits" to which the Excess Policies apply.

135. As set out in the Excess Policies' Insuring Agreement, except for the policy premiums, limits of insurance, deductible, retentions and any defense obligations, Coverage A - Excess Follow Form Liability Coverage applies in conformance with the provisions of the applicable "underlying insurance. Coverage A - Excess Follow Form Liability Coverage, will not provide coverage for any loss that is not covered by the applicable "underlying insurance" except by reason of the exhaustion of the "underlying limits" through payment of loss thereunder.

136. Coverage A- Excess Follow Form Liability Coverage contains and is subject to a Pollution Exclusion.

34

137.    Under paragraph (a) of the Pollution Exclusion, the Excess Policies' Coverage A does not apply to "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any Insured.

138.    Under paragraph (c) of the Pollution Exclusion, The Excess Policies' Coverage A does not apply to: any actual or alleged loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or and claim by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

139.    As defined in the Excess Policies, "pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which includes materials to be recycled, reconditioned, or reclaimed.

140.    The PFAS chemicals at issue in the Underlying Lawsuit, are "pollutants" as defined.

141.    Because the Underlying Lawsuit seeks to impose liability on STC for the alleged discharge and release of wastewater contaminated with PFAS from the STC Facility, which is owned and operated by STC, paragraph (a) of the Pollution Exclusion applies.

142.    Because the Underlying Lawsuit seeks relief for monitoring, clean up, removal, containment, and treatment of PFAS in Santee Cooper's water supplies, paragraph (c) of the Pollution Exclusion applies.

143. Based on the application of paragraph (a) and/or paragraph (c) of the Pollution Exclusion, there is no coverage for the Underlying Lawsuit under the Excess Policies' Coverage A – Follow Form Excess Liability Part.

## COUNT XIV– DECLARATORY JUDGMENT
### No Coverage Under the Excess Policies' Coverage B – Umbrella Liability Coverage is Subject to an Absolute Pollution Exclusion

144. CIC repeats and incorporates by reference paragraphs 1 through 143 as though fully set forth herein.

145. The Excess Policies' Coverage B provides Umbrella Liability Coverage.

146. Coverage under the Excess Policies' Coverage B - Umbrella Liability, is subject to a Pollution Exclusion, under which there is no coverage, in relevant part, for: (a) any actual or alleged "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time; or (b) any actual or alleged loss, cost or expense arising out of any: (i) request, demand, order, or statutory or regulatory requirement that anyone test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants;" or (ii) "claim" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants."

147. The PFAS chemicals at issue in the Underlying Lawsuit, are "pollutants" as defined in the Excess Policies.

148. Because the Underlying Lawsuit seeks to impose liability on STC for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time, paragraph (a) of the Pollution Exclusion applies.

36

149.     Because the Underlying Lawsuit seeks relief for monitoring, clean up, removal, containment, and treatment of PFAS in Santee Cooper's water supplies, paragraph (b) of the Pollution Exclusion applies.

150.     Based on the application of paragraph (a) and/or paragraph (b) of the Pollution Exclusion, there is no coverage for the Underlying Lawsuit under the Excess Policies' Coverage B – Umbrella Liability.

WHEREFORE, the CNA Insurers respectfully request that the Court enter judgment declaring:

a.     That there is no coverage for the Underlying Lawsuit under the Primary Policies' CGL Coverage Part;

b.     There is no coverage for the Underlying Lawsuit under the Primary Policies' Limited Pollution Coverage Endorsement;

c.     That there is no coverage for the Underlying Lawsuit under Part A or Part B of the Excess Policies; and

d.     Awarding any and all other relief to which the CNA Insurers may be entitled.

July 24, 2026

NATIONAL FIRE INSURANCE COMPANY OF
HARTFORD, VALLEY FORGE INSURANCE
COMPANY, CONTINENTAL CASUALTY
COMPANY, and THE CONTINENTAL
INSURANCE COMPANY


By:

    /s/ Alex B. Mahler
ALEXANDER B. MAHLER
amahler@ nicolaidesllp.com
AMY KLIE (*pro hac vice application pending*)
aklie@nicolaidesllp.com

NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP
10 S. Wacker Drive, 36th Floor
Chicago, Illinois 60606
(312) 585-1400
Attorneys for Plaintiff